JMcL
20050345
5/3/05

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### SEARCH WARRANT

TO: THE CHIEF OF POLICE OR ANY OTHER LAW ENFORCEMENT OFFICERS
(Specific Law Enforcement Officer or Classification of Officer of the Metropolitan Police Department or other Authorized Agency)

Affidavit, herewith attached, having been made before me by Officer Charles Fultz Of The Major Narcotics Branch that he has probable cause to believe that on the (person) (premises) (vehicle) (object) known as WASHINGTON DC #40 IS THREE STORY BROWN BRICK APT BUILDING WITH THE ___ AFFIXED TO THE FRONT OF THE BUILDING. THE ENTRY DOOR TO THE APT IS GLASS WITH SILVER FRAM. THE APARTMENT DOOR IS DOWN ONE FLIGHT OF STAIRS AND IS THE FIRST DOOR TO THE RIGHT AS YOU ENTER THE BUILDING. THE APARTMENT IS TAN IN COLOR WITH NUMBER ___ AFFIXED TO DOOR in the District of Columbia, there is now being concealed certain property, ILLEGAL DRUGS TO WIT COCAINE, MPDC PRE-RECORDED FUNDS, PARAPHERNALIA, RECORDS PAPERS OR DOCUMENTS RELATING TO THE DISTRIBUTION OR POSSESSION OF NARCOTICS AND PAPERS RELATING TO THE OWNERSHIP OR OCCUPANCY OF THE ABOVE DESCRIBED PREMISES.

which is In violation of D.C. Code 48 SECTION 904.1 and as I am satisfied
(Alleged grounds for seizure)

that there is probable cause to believe that the property so described is being concealed on the above designated (person) (premises) (vehicle) (object) and that the foregoing grounds for issuance of the warrant exist.

YOU ARE HEREBY AUTHORIZED within 10 days of the date of issuance of this warrant to search in the daytime/at any time of the day or night, the designated (person) (premises) (vehicle) (object) for the property specified and if the property be found there.

YOU ARE COMMANDED TO SEIZE IT, TO WRITE AND SUBSCRIBE an inventory of the property seized, to leave a copy of this warrant and return to file, a further copy of this warrant and return with the Court on the next Court day after its execution.

Issued this 2nd day of MAY, 20 05

Judge, Superior Court of the District of Columbia

### RETURN

I received the above detailed warrant on MAY 2ND, 20 05 and have executed it as follows:
On MAY 3RD, 20 05, at (1910 HRS) 7:10 P.M., I searched the (person) (premises) (vehicles) (object) described in the warrant and I left a copy of the warrant and return with RAMONA CHAMBERS property posted.
(Name of person searched or owner, occupant, custodian or person present at place of search)

The following is an inventory of the property taken pursuant to this warrant:
MAIL MATTER, FALSE BOTTOM CAN, DIGITAL SCALE w/ WHITE RESIDUE, EMPTY ZIPS, PLATE w/ WHITE RESIDUE, BLACK SEMI-AUTO HANDGUN w/ HOLSTER, LOOSE ROCKLIKE SUBST. (LARGE AMOUNT), CLOTHING, DIGITAL SCALES, GUN CLEANING KIT, EMPTY ZIPLOC BAGS. CASHIERS CHECK IN AMOUNT OF $18,500.

This Inventory was made in the presence of FULTZ, GREENE, FENTON, SHAW, WITKOWSKI, PEIDO, PEARCE, WASHINGTON
I swear that this is a true and detailed account of all property taken by me under this warrant.

Executing Officer

Subscribed and sworn to before me this 4th day of MAY, 20 05

Judge, Superior Court of the District of Columbia

Form CD(17)-1055 / Mar. 89
9-2794 wd-234

METROPOLITAN POLICE DEPARTMENT
Washington, D.C.

AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A
SEARCH WARRANT

PREMISES: _____ WASHINGTON, D.C. APARTMENT    S A THREE STORY BROWN BRICK APARTMENT BUILDING WITH THE NUMBERS    FFIXED TO THE FRONT OF THE BUILDING. THE ENTRY DOOR TO THE APARTMENT BUILDING IS GLASS WITH SILVER FRAM. THE APARTMENT DOOR IS DOWN ONE FLIGHT OF STAIRS AND IS THE FIRST DOOR TO THE RIGHT AS YOU ENTER THE BUILDING. THE APARTMENT DOOR IS TAN IN COLOR WITH THE NUMBER    AFFIXED TO THE DOOR.

Officer Charles E. Fultz has been a member of the Metropolitan Police Department since 1994-1998 broken time 2002 to the present and is currently assigned to the Major Narcotics Branch. During my tenure with the department I have been involved in more than 1000 narcotics and weapons related arrests and specialized in investigating violations of narcotic laws in the District of Columbia and the United States.

Based upon this affiant's training, experience, and participation in other investigations involving controlled dangerous substances (CDS), I know:

A.  That narcotics traffickers often purchase and/or title their assists in fictitious names, aliases or the names of their relatives, friends or associates.

B.  That narcotics traffickers maintain on hand large amounts of U.S. Currency in order to maintain and finance their narcotics business.

C.  That narcotics traffickers maintain books, records, receipts, notes, ledgers, money orders, and other papers relating to the purchase of financial instruments and other papers relating to the transportation, ordering, sale and distribution of controlled substances.

D.  That narcotics traffickers conceal proceeds of narcotics sales and records of narcotics transactions in secure locations within their residences, businesses, safe deposit boxes or other locations over which they maintain dominion or control for ready access.

E.  That narcotics traffickers take or cause to be taken photographs of themselves, their associates, their property, and their product, using still and video cameras. That these traffickers usually maintain these photographs in their residences, businesses, safe deposit boxes and other locations over which they maintain dominion or control for ready access.

F.  That narcotics traffickers commonly maintain books or papers which reflect the names addresses and/or telephone numbers of their suppliers, couriers, customers, and other associates in the illegal drug trade, and that it is common for drug traffickers to maintain the aforementioned documents so that the drug traffickers have ready access to such information.

G.  That narcotics traffickers often conceal contraband, scales, bags, packaging materials and other paraphernalia in locations within their residences, businesses, safe deposit boxes and other locations over which they maintain dominion and control for ready access.

H.  That narcotics traffickers often utilize cellular telephones and/or portable cellular telephones so as to make it more difficult for law enforcement authorities to identify and/or intercept their conversations. That these traffickers utilize various types of electronic equipment to maintain contact between themselves, to include digital pagers, scanners and telephone tapping devices.

1 of 3

I. That narcotics traffickers commonly have in their possession, that is on their person, at their residences and/or businesses, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machineguns and other weapons. These weapons are used to protect and secure the drug traffickers property, to include all items referenced above.

On April 28 2005 while working in an undercover capacity undercover officer 2191 responded to _____ to purchase some illicit drugs. Once in the area undercover officer 2191 states while sitting in it's vehicle IT observed defendant Chambers who was wearing a black jacket with a white strip, black skull cap, blue jeans and glasses reach into his crotch area and pull out a clear baggie that contained multiple green zip-locks. Undercover Officer 2191 then observed defendant Chambers hand an unidentified black male a green zip-lock in exchange for US Currency. The unidentified black male then walked out of the area. Undercover Officer 2191 while still sitting IT'S vehicle IT observed a dark gray Chrysler Sebring pull up that was being driven by defendant Wilson. Defendant Chambers then walked up to the driver's side door with the aforementioned clear baggie in his hand at which time defendant Chambers gave defendant Wilson a small object from this baggie in exchange for US Currency. Undercover Officer 2191 exited IT'S vehicle approached defendant Chambers and him for two dimes. Defendant Chambers stated he did not sell dimes. Undercover Officer 2191 then got back into IT'S vehicle and broadcasted a look-out for the unidentified black male, defendants Chambers and Wilson and also the vehicle in which defendant Wilson was driving. Members of the arrest team moved in on the lookouts and stopped defendant Chambers and defendant Wilson. Defendant Chambers and Wilson were positively identified at which timed they were placed under arrest. Members canvassed for the unidentified black male with negative results. Search Incident to arrest members recovered from defendant Wilson (1) xanax pill, two clear zip-locks of a white powder substance which field- tested positive for cocaine and two green zip-locks with white rock-like substance inside each which field-tested positive for cocaine. Members conducted a search of defendant Chambers members recovered from his crotch one clear baggie which contained nine (9) green zip-locks of a white rock like substance which field tested positive for cocaine. Members also recovered from defendant Chamber's person twelve hundred and thirty-two dollars in US Currency from defendant Chambers person. Defendant Chambers then gave consent to search his black Ford Explorer bearing a District of Columbia tag of BV-6742. Search of this vehicle, members recovered from the middle console of the Ford Explorer a eye glass case that contained approximately 42.5 grams of crack cocaine that field tested positive for cocaine. Chambers and Wilson were transported for processing.

During the conversation with Chambers he gave the address of _____, Washington, D.C. apartment ___ Recovered from the vehicle was male matter with the address of 1905 Rosedale Street Northeast, Washington, D.C. apartment ___ A check of the Rosedale apartment revealed that the apartment was no longer occupied by anyone. Further investigation of _____, Washington, D.C. apartment ___ revealed that Chambers lives in that apartment at this time.

In view of the above-mentioned information by your affiant, your affiant believes that probable cause exists to believe that there is now secreted within the premises of _____ Washington, D.C. apartment ___ drugs to wit: cocaine, paraphernalia and documents relating to the processing, packaging, sale and distribution in violation of D.C. Code 48 Section 904.1 and that the facts set forth herein afford probable cause in support of that belief.

It is therefore respectfully requested that a District of Columbia Superior Court Judge issue a Search Warrant, directing the search of the entire premises which is described in the premises at the beginning of the affidavit for the seizure of any and all narcotics and controlled substances, and any evidence of the manufacture and packaging relating to the distribution of narcotics and any records relating to the accumulation of disposition of assets derived from narcotic trafficking and any proceeds.

_____  
Affiant

_____  
Assistant United States Attorney

Subscribed and sworn to before me this _2nd_ day of _May_ 2005

_____
Judge, Superior Court of the District of Columbia

3 of 3